**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 17-125-DLB**

**MARK ROARK**                                                                          **PLAINTIFF**

vs.                     **MEMORANDUM OPINION AND ORDER**

**NANCY A. BERRYHILL, Commissioner
of the Social Security Administration**                              **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On August 12, 2014, Plaintiff Mark Roark applied for disability insurance benefits (DIB), alleging disability beginning on January 8, 2014. (Tr. 140-143). Plaintiff's application was denied initially, and again on reconsideration. (Tr. 56-66; 68-79). At Plaintiff's request, an administrative hearing was conducted on August 10, 2016, before Administrative Law Judge (ALJ) Davida H. Isaacs. (Tr. 30-54). On December 9, 2016, ALJ Isaacs ruled that Plaintiff was not entitled to benefits. (Tr. 12-29). This decision became the final decision of the Commissioner on June 19, 2017, when the Appeals Council denied Plaintiff's request for review.[1] (Tr. 1-9).

---

[1] When the Appeals Council reviewed ALJ Isaacs's decision, it also reviewed additional evidence submitted by Plaintiff. (Tr. 2). Because the additional evidence did not "show a reasonable probability that

1

Plaintiff filed the instant action on July 19, 2017, seeking review of the ALJ's decision. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 9 and 11).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Put another way, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan*, 474 F.3d at 833 (citing *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). "This is so because there is a 'zone of choice' within which the Commissioner can act,

---

it would change the outcome of the decision" and because other evidence was created after the ALJ's decision, the Appeals Council did not consider the additional evidence. *Id.*

without the fear of court interference." *Buxton*, 246 F.3d at 772.

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. The burden of proof rests with the claimant on Steps One through Four. As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 8, 2014, the alleged disability onset date. (Tr. 17). At Step Two, the ALJ determined that the Plaintiff had one severe impairment: degenerative disc disease. *Id*. The ALJ determined that the Plaintiff's alleged interstitial cystitis, prostatitis, and hypertension, considered individually and in combination, were non-severe impairments because they did not "impose more than a slight or minimal limitation in the claimant's ability to perform basic work-related activities on a sustained basis." *Id*. At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 19).

At Step Four, the ALJ found that the Plaintiff possessed the residual functional capacity (RFC) to perform work at the sedentary exertional level, as defined in 20 C.F.R. § 404.1567(b), with the following, additional limitations:

> [T]he claimant can lift no more than 10 pounds; can only stand and walk for no more than two hours in an eight hour workday; can stand and walk for 30 minutes before needing to sit for 30 minutes; can sit up to six hours in an eight hour workday; no more than occasional climbing ramps or stairs; no more than occasional climbing ladders, ropes, or scaffolds; no more than occasional balancing, stooping, kneeling, crouching, or crawling; should avoid more than occasional exposure to vibration from machinery and hand tools, and the claimant would be off task for five percent of the workday due to discomfort.

(Tr. 19-20). Based on this RFC and relying partially on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was able to perform his past relevant work as a quarry manager. (Tr. 23). Although the VE found that "the claimant would not be able to perform the requirements of a quarry manager as generally performed in the national economy," the VE purportedly testified and the ALJ concluded, that the Plaintiff "would be able to perform the job as it was actually performed," according to the Plaintiff's hearing testimony and his Work History Report. *Id.* Accordingly, the ALJ ruled that Plaintiff was not under a disability, as defined in the Social Security Act. (Tr. 24).

**C.     Analysis**

Each of the arguments advanced in Plaintiff's Motion for Summary Judgment challenge the ALJ's Step Four finding that he could return to his past relevant work as a quarry manager. (Doc. # 9). First, Plaintiff takes issue with the ALJ's decision that he could perform his past relevant work, as actually performed, despite the VE's testimony that he could not return to his past work as generally performed. (Doc. # 9-2 at 5). Second, Plaintiff alleges that the ALJ's decision that he could perform his past work, as

he actually performed it, is not supported by substantial evidence. *Id.* at 4-5. Relatedly, Plaintiff argues that the inaudible portion of the VE's testimony on the critical issue of whether he could perform his past work precludes meaningful appellate review. *Id.* at 5-6. The Court will consider each argument in turn.

### *1.    The ALJ's Step Four analysis is not contrary to law.*

At Step Four of the sequential analysis, the ALJ must determine whether the claimant can still perform his past relevant work.[2] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e). "When evaluating whether a claimant can perform past relevant work, the regulations mandate examining the claimant's" RFC and comparing it to the physical and mental demands of the claimant's past relevant work. *Boucher v. Apfel*, 238 F.3d 419 (6th Cir. 2000) (table); 20 C.F.R. § 404.1520(f).

There are "[t]hree possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant work." SSR 82-61, 1982 WL 31387, *1 (Jan. 1, 1982). The first tests asks "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupation classification of that job, *e.g.*, 'delivery job,' 'packaging job,' etc." *Id.* A "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable," however. *Id.* The second test asks "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." *Id.* "Under this test, where the evidence shows that a claimant retains the RFC to perform the functional demands

---

[2]     "Past relevant work is work that" the claimant has "done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1).

5

and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" *Id.* at 2. The third test asks "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.*

In this case, the ALJ employed the second test and concluded that Plaintiff was not disabled within the meaning of the Act because he could perform his past relevant work as a quarry manager, as he actually performed it. (Tr. 23-24). Although the ALJ did not rely on the third test, the VE testified at the administrative hearing that Plaintiff did not retain the capacity to perform the functional demands and job duties of the job of quarry manager, as ordinarily required by employers throughout the national economy. *Id.* Thus, the second test requires a finding that Plaintiff is not disabled, while the third test would indicate that Plaintiff is disabled.

As illustrated above, there are circumstances where the past-relevant-work tests will produce conflicting results. Within a broad occupational title, work can be performed in countless ways. The Commissioner has recognized this dichotomy and contemplated the possibility that a "former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *1. Under that scenario, and "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.* In simpler terms, if Plaintiff satisfies the "actually performed" prong of Step Four, the Commissioner can

6

utilize generalities from the national economy to eliminate subjectivity from the past-relevant-work inquiry, and deny benefits under the "generally performed" prong if the Plaintiff's RFC enables him to perform his past relevant work, as generally required by employers.

However, neither the Regulations nor Social Security Ruling 82-61 contemplate the opposite situation—that is, when Plaintiff's past job, as actually performed, was more lenient than the functional demands and job duties generally required for the job by other employers throughout the national economy. Such is the case here. Although the VE testified that Plaintiff's RFC would not permit him to perform his past relevant work as generally preformed in the national economy, the ALJ determined that Plaintiff could perform his past relevant job, as actually performed, and thus, concluded that the second test was satisfied and that Plaintiff was not disabled. (Tr. 23). The result—that Plaintiff is not disabled under the Act because he can perform his past job, which he was terminated from and cannot return to, and even though the evidence establishes that he could not perform the job of quarry manager for another employer—defies common sense and conflicts with the purpose of the Social Security Act.[3] Nevertheless, case law supports the ALJ's analysis.

Unlike the Commissioner, claimants cannot rely on the generalities or realities of the national economy to eliminate subjectivity from the past-relevant-work inquiry and establish that they are entitled to benefits. All that matters is that the claimant retains the capacity to perform the functional demands and job duties of his previous job.

---

[3] The Court recognizes that there is "a clear distinction between disability benefits and unemployment benefits." SSR 82-61, 1982 WL 31387, at *1. However, the Court, if ruling on this issue in the first instance, would reject the logic that a claimant is not disabled because he is capable of performing work that does not exist.

7

When the Commissioner concludes the sequential analysis at Step Four and determines that the claimant can perform his past relevant work, either as actually performed or as generally performed in the national economy, there is no requirement that the Commissioner consider whether such a position is actually available to the claimant or whether a significant number of positions exist in the national economy. *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) ("Social Security Ruling 82-40 makes express what is implicit in Ruling 82-61: The Secretary will not consider whether past work as actually performed is currently available in significant numbers in the national economy."). Put another way, it matters not whether the claimant can actually return to his former job or whether that job actually exists in the national economy.

Similarly, a claimant who can perform his past relevant work, as actually performed, cannot escape that finding, even if his specific job was more lenient than the functional demands generally required for that job by other employers throughout the national economy. In *Garcia*, the Sixth Circuit held: "It is generally reasonable (and consistent with the statute) to conclude that a person capable of performing work he performed before the impairment is not disabled as a matter of law and should be denied benefits." *Id.* at 558. While other courts had held "that a claimant cannot be denied benefits at Step Four where the requirements of his prior work as actually performed were uniquely lenient, more lenient than the requirements of his prior work as generally performed throughout the economy," the Sixth Circuit found those cases "unpersuasive" because the courts had substituted their judgment for the reasonable judgment of the Secretary, a result *Chevron* forbids. *Id.* (citing *Kolman v. Sullivan*, 925 F.2d 212, 214 (7th

Cir. 1991); *Rivera v. Sullivan*, 771 F. Supp. 1339, 1356-57 (S.D.N.Y. 1991); *Patton v. Sullivan*, No. 88-cv-7916, 1989 WL 134822 (N.D. Ill. Oct. 30, 1989)).

Subsequently, the Supreme Court endorsed the Sixth Circuit's decision and reasoning in *Garcia*. *See Barnhart v. Thomas*, 540 U.S. 20, 28-29 (2003). In *Barnhart*, the Supreme Court considered whether Pauline Thomas, who worked as an elevator operator until her job was eliminated, was under a disability, as defined in the Social Security Act. *Id.* at 22. The ALJ determined that Thomas's impairments did not prevent her from performing her past relevant work as an elevator operator. *Id*. The District Court affirmed the ALJ and concluded "that whether Thomas's old job exists is irrelevant under the SSA's regulations." *Id.* at 22-23. The Third Circuit, sitting en banc, reversed and remanded. *Id.* at 23. The Supreme Court granted the Social Security Administration's writ of certiorari and reversed the Third Circuit, adopting reasoning similar to the Sixth Circuit's in *Garcia*. *Id.* (citing *Garcia*, 46 F.3d at 558).

Although the Third Circuit "suggested that interpreting the statute as does the SSA would lead to 'absurd results,'" as it arguably does here, the Supreme Court held that there were plausible reasons "why Congress might have wanted to deny benefits to an otherwise qualified person simply because that person, although unable to perform any job that actually exists in the national economy, could perform a previous job that no longer exists":

> Congress could have determined that an analysis of a claimant's physical and mental capacity to do his previous work would "in the vast majority of cases" serve as an effective and efficient administrative proxy for the claimant's ability to do *some* work that does exist in the national economy. Such a proxy is useful because the step-five inquiry into whether the claimant's cumulative impairments preclude him from finding "other" work is very difficult, requiring consideration of "each of the vocational factors and … an individual assessment of each claimant's abilities and limitations."

9

*Id.* at 28 (citing *Heckler v. Campbell*, 461 U.S. 458, 460-61 n.1 (1983)).

In *Garcia*, the Sixth Circuit stopped short of holding that it would *always* be reasonable for the Secretary to conclude that a person capable of performing his past work is not disabled as a matter of law. *Garcia*, 46 F.3d at 558 n.6 ("Whether this conclusion would be reasonable or consistent with the Act where the claimant shows that his prior work was less demanding than sedentary work … is not before us today, and we express no opinion on the matter."). Despite the Sixth Circuit's decision to leave this narrow issue open for further consideration, the Supreme Court's decision and broad language in *Barnhart* suggest that such an argument is foreclosed.

Specifically, the *Barnhart* Court dismissed the Third Circuit's worry that the Social Security Administration's interpretation could "produce results that may not always be true," and reasoned that the Third Circuit's "logic would invalidate a vast number of the procedures employed by the administrative state" because "[v]irtually *every* legal (or other) rule has imperfect applications in particular circumstances." *Barnhart*, 540 U.S. at 29. The Supreme Court considered the inequities and explained:

> It is true that, under the SSA's interpretation, a worker with severely limited capacity who has managed to find easy work in a declining industry could be penalized for his troubles if the job later disappears. It is also true, however, that under the Third Circuit's interpretation, impaired workers in declining or marginal industries who cannot do "other" work could simply refuse to return to their jobs—even though the jobs remain open and available—and nonetheless draw disability benefits. The proper *Chevron* inquiry is not whether the agency construction can give rise to undesirable results in some instances (as here *both* constructions can), but rather whether, in light of the alternatives, the agency construction is reasonable. In the present case, the SSA's authoritative interpretation certainly satisfies that test.

*Id.* Accordingly, the ALJ's analysis, which concluded that the Plaintiff could perform his

past relevant work as a quarry manager, as actually performed, and refused to consider whether Plaintiff could actually return to that job, whether such a job actually exists in the national economy, or whether that job was uniquely lenient compared to its counterparts in the national economy, is not contrary to law.

### 2. However, the ALJ's determination that Plaintiff can perform his past relevant work, as he actually performed it, is not supported by substantial evidence.

Having determined that the ALJ's conclusion that Plaintiff could perform his past relevant work as a quarry manager, as actually performed, was not contrary to law, the Court must now consider whether substantial evidence supports that conclusion. If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed, even if this Court would have decided the matter differently and even if substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833.

To "determine whether a claimant can do his past relevant work, given his RFC," the "regulations permit an ALJ to use the services of a vocational expert at Step Four." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citing 20 C.F.R. § 404.1560(b)(2)). Specifically, the "vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). "In addition, a vocation expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's

previous work, either as the claimant actually performed it or as generally performed in the national economy." *Id.*

In this case, the ALJ utilized the services of a VE and relied on the VE's testimony that the Plaintiff could perform his past relevant work as a quarry manager, as actually performed.[4] (Tr. 23) ("I accept this testimony and concluded that the claimant is capable of perform his past relevant work."). Specifically, the ALJ found that Plaintiff's past relevant work as a quarry manager was actually performed as sedentary work, and thus, the Plaintiff had the residual functional capacity to perform that work. (Tr. 24). The Plaintiff claims the ALJ's conclusion is not supported by substantial evidence. (Doc. # 9-2 at 4-6).

"As an initial matter, [the Court] notes that the burden of proof lies with the claimant at Steps One through Four of the process, culminating with a claimant's proof that [he] cannot perform [his] past relevant work." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). At Step Four, the claimant carries his burden by establishing that he is "unable to do his previous work," as actually performed or as generally performed. 42 U.S.C. § 423(d)(2)(A). However, it is the Commissioner's responsibility to file, and provide the Court with, "a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g).

The Plaintiff claims that substantial evidence does not support the ALJ's decision because inaudible portions of the hearing testimony preclude meaningful appellate review. (Doc. # 9-2 at 5-6). Although "there is no precedent regarding this issue in the

---

[4] "Substantial evidence may be produced through reliance on the testimony of a vocational expert.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Sixth Circuit," a review of case law from other jurisdictions provides guidance. *Hart v. Colvin*, 4:14-cv-9-HBB, 2014 WL 2993802, *2 (W.D. Ky. July 3, 2014). "Courts consistently send cases back to the Commissioner when a significant piece of evidence is missing from the record." *Clarke v. Colvin*, No. 13-cv-11534, 2014 WL 4605690, *8 (E.D. Mich. Sept. 15, 2014); *see also Bianchi v. Sec'y of Health & Human Servs.*, 764 F.2d 44, 46 (1st Cir. 1985); *Scott v. Bowen*, 808 F.2d 1428, 1430 (11th Cir. 1987); *Taylor v. Heckler*, 769 F.2d 201, 201-02 (4th Cir. 1985).[5] "This is particularly true when the absent evidence is hearing testimony, or even just key portions of it." *Id*.

Thus, a procedural deficiency, such as an inaudible recording of a hearing, may constitute good cause for remand. As Congress has recognized:

> [T]here are sometimes procedural difficulties which prevent the Secretary from providing the court with a transcript of administrative proceedings. Such a situation is an example of what could be considered "good cause" for remand. Where, for example, the tape recording of claimant's oral hearing is lost or inaudible, or cannot otherwise be transcribed … good cause would exist to remand the claim to the Secretary for appropriate action to produce a record which the court may review.

H.R. Conf. Rep. No. 944, 96th Cong., 2d Sess. 59 (1980), *reprinted in* 1980 U.S.C.C.A.N. 1277, 1047; *see also Hart v. Colvin*, 2014 WL 2993802, at *2.

In this case, the ALJ purports to rely on the testimony of the VE in concluding that Plaintiff can perform his past relevant work as a quarry manager, as actually performed. (Tr. 23-24). On the current record, however, the Court is unable to determine or review the content of the VE's testimony because of "inaudible" testimony during critical portions

---

[5] The Eighth Circuit applies a more stringent standard, "requiring proof that the absence of the evidence prejudices the plaintiff or prevents judicial review," the current case warrants remand. *Clarke*, 2014 WL 4605690, at *9 (citing *Williams v. Barnhart*, 289 F.3d 556, 557-58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record.")).

of the administrative hearing:

> Q: (By ALJ) Okay. And if you would first classify, well I'll let you classify it and then I'll ask you any follow up questions if I need to.
> A: (By VE) Okay. He was a quarry manager from 1990 to January 2014 in a key number of years, 939.131-010 according to the [Dictionary of Occupational Titles] it is a light occupation with an SVP: 7, skilled occupation.
> Q: Okay. As it's described in the work history?
> A: That is as he described it in his work history (INAUDIBLE) he indicated that he was lifting less than 10 pounds but according to the national standard it's a light job.
> Q: (By Attorney) If I may I think he said he lifted up to 50 pounds doing that job.
> A: (By Claimant) Yes. Sometimes it would be 50 pounds, you know, in that job. Depended on what I was delivering to the men at work.
> Q: (By ALJ) Well, first of all he was, he had broken it down to some period of time earlier on in the career and then a later point at 2016. And so it may be that the job had changed or – sir, was there, you noted in 2006, was there something in 2006 that changed the date or moved someone who did a job in between or what changed?
> A: (By Claimant) What happened in 2006 the company that owned us prior to this they, we didn't have a lot of paperwork, stuff we had to do, we hadn't do a lot of that, w were just mostly out in the field with the men working all the time, and now we done more paperwork and less real physical work.
> Q: Okay.
> A: We had other things we had to attend to.
> Q: Okay. So I'm going to say that for some of [sic] period of time before 2006 the work as described it would be medium but then there's some change to sedentary. I'll ask our vocational expert does that sound like his description to you, does that accord with your understanding?
> A: (By VE) Yes, it does.
> Q: All right. If you would first consider an individual of the claimant's age, and I note at the age of onset is 54 years and seven months. His educational level of 9th grade and the past work history. And if you could consider someone who can lift and carry no more than 10 pounds frequently and 20 pounds occasionally. Who could stand or walk for up to six hours of the workday, sit for up to six hours of the workday, who can no more than occasionally climb ramps or stairs, ladders, ropes, or scaffold, balance, stoop, kneel, crouch and crawl and who would have to avoid more than occasional exposure to, I'm sorry, balancing is unlimited and but avoid more than occasional exposure to vibrations from machinery and hand tools. Could such an individual perform the claimant's past work?
> A: (No audible response.)
> Q: (By Attorney) I'm sorry, Your Honor, I could not, couldn't hear the

14

answer.
A: (By ALJ) She said she wants to just, she (INAUDIBLE) to the Claimant's past work.
Q: (By Attorney) Okay, thank you.
A: (By VE) Yes, that hypothetical individual would be able to perform the past work as it is (INAUDIBLE).
Q: (By ALJ) Okay. And if I found that the individual, the hypothetical individual could stand or walk for no more than four hours of the workday and that they could stand and walk for no more than 30 minutes before needing to sit for 30 minutes would that change the answer?
A: (By VE) Yes, it would. (INAUDIBLE) according to national standards that would be eliminated.
Q: Because they stand and walk for more than four hours a day?
A: Yes. If they can't walk more than 30 minutes at a time.
Q: Okay. And as performed?
A: As performed, as he performed it after '06 according to the document I'm looking at – indicated that (INAUDIBLE).
Q: What percentage of time does an average employer tolerate off task—
A: No more than 10 percent of the day, not taken all at one time but in – no more than 10 percent.
Q: Counsel, do you have questions for the vocational expert?
A: (By Attorney) Yes, Your Honor.
Q: (By Attorney) If he was limited to, give me one second please, lift no more than 10 pounds, and he could only stand and walk for two hours during the workday would he be able to perform his past work?
A: (By VE) I want to be sure I heard that correctly. You said he would be able to lift no more than 10 pounds and stand or walk no more than two hours in a day, is that correct, sir?
Q: Yes.
A: Okay. The work as he performed it, no, he could not, the work as defined after 2006 that is ruled out, it appears the hypothetical individual.

(Tr. 50-53).

As evidenced from the excerpt above, "[t]he transcript of [the VE's] testimony is virtually unintelligible." *Bianchi*, 764 F.2d at 46. The Court cannot make heads or tails of a significant portion of the VE's testimony. That portion, unfortunately, is during the VE's testimony regarding Plaintiff's ability to perform his past relevant work as a quarry

15

manager.[6] Critically, in response to the ALJ's question whether Plaintiff can perform his past relevant work as actually performed, there is no clear answer by the VE. Moreover, the VE's testimony regarding the ability to lift and stand/walk, and its impact on the Plaintiff's ability to perform his past relevant work, compels remand. When asked about a limitation of lifting "no more than 10 pounds" and standing and walking "no more than two hours in a day," the VE testified: "The work as he performed it, no, he could not, the work as defined after 2006 that is ruled out." (Tr. 52-53). The ALJ included both of those limitations in the RFC she assessed for Plaintiff. (Tr. 19) ("the claimant can lift no more than 10 pounds; can only stand and walk for no more than two hours in an eight hour workday"). How, then, did the ALJ credit the VE's testimony *and* conclude that Plaintiff could perform his past relevant work, as actually performed? Without substantial evidence.

"These problems with the administrative record are more than mere inconveniences." *Collins v. Astrue*, No. 06-cv-211-GFVT, 2008 WL 817332, *6 (E.D. Ky. Mar. 21, 2008). The inaudible testimony "effectively prevent[s] the Court from fulfilling its statutory obligation—namely, to inquire whether the Commissioner's decision is supported by substantial evidence." *Id*. Even aside from the serious gaps in the hearing transcript, it appears that the ALJ's decision is not supported by substantial evidence. Accordingly, pursuant to Sentence Four,[7] this matter is remanded to the Commissioner

---

[6] Thus, even under the Eighth Circuit's more stringent standard, remand is warranted. A review of the hearing transcript reveals that the inaudible portions could aid the Plaintiff. This is not a case where the "missing evidence is material." *Clarke*, 2014 WL 4605690, at *9. Nor is it a case where "[a]lthough distracting, the gaps [do] not interfere with comprehension of the testimony." *Ward v. Hecker*, 786 F.2d 844, 848 (8th Cir. 1986).

[7] Sentence Four of 42 U.S.C. § 405(g) provides that "the court shall have the power to enter, upon the pleadings and transcript of a record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."

for further administrative proceedings.

## III.  CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act is not supported by substantial evidence.  Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)  Plaintiff's Motion for Summary Judgment (Doc. # 9) is hereby **GRANTED**;

(2)  Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3)  This action is hereby **REMANDED** to the Commissioner under Sentence Four of 42 U.S.C. § 405(g), with instructions to conduct a new hearing and create an administrative transcript, free of procedural deficiencies.  The ALJ is further instructed to consider and adequately address the errors in the Step Four analysis, including the previous past-relevant-work conclusion, which conflicts with the lifting, standing, and walking limitations incorporated into Plaintiff's RFC and the VE's testimony.  The ALJ shall then proceed to Step Five, if required by the revised Step Four analysis; and

(4)  A Judgment will be entered contemporaneously herewith.

This 25th day of January, 2018.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Pikeville\17-125 Roark MOO.docx

17